IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILIP STUDER & JOANNE E. KARABEC-STUDER, | : : : | CIVIL ACTION |
| *Plaintiffs,* | : : | |
| v. | : : | |
| AVIS RENT A CAR SYSTEM, LLC, et al., | : : | |
| *Defendants.* | : | No. 23-cv-3828 |

## MEMORANDUM

**KENNEY, J.**                                                                                                   **March 28, 2025**

Defendants Avis Rent a Car System, LLC; Avis Rent a Car System, Inc.; Avis Budget Group, Inc.; Avis Budget Car Rental, LLC; and PV Holding Corp. move for summary judgment on Plaintiffs Philip Studer and Joanne E. Karabec-Studer's punitive damages claims. ECF No. 63 at 1. For the reasons set forth below, this Court will **DENY** the Motion (ECF No. 63).

**I.      BACKGROUND**

Shortly before November 10, 2022, in anticipation of driving from Washington, D.C. to Ohio, Plaintiffs reserved a rental vehicle through Defendants' website from their residence in Florida. *See* ECF No. 64-2 at 4–5; ECF No. 64 at 1. On November 10, 2022, Plaintiffs flew from Florida to Ronald Reagan Washington National Airport to pick up the rental vehicle. *See* ECF No. 64-2 at 4, 6. Ronald Reagan Washington National Airport, and Defendants' associated airport location, is located outside of Washington D.C., in Arlington, Virginia. *See id.* at 4. Upon arriving at the airport, Plaintiffs picked up a rental vehicle from Defendants' airport location. *Id.* at 5.

The following day, on November 11, 2022, Plaintiffs returned to Defendants' airport location and received a replacement vehicle because the first vehicle allegedly smelled of

cigarettes, and they began their drive to Ohio. *Id.* at 6–7. Later that day, Plaintiffs lost control of their vehicle on the Pennsylvania Turnpike near Gibsonia, Pennsylvania, and were in a car accident. *See* ECF No. 64 at 1. Shortly after the accident, according to a police officer at the scene, the left and right rear tires of Plaintiffs' vehicle had a tread depth of 1/32nd and 0/32nd, respectively, and the front tires each had a tread depth of 4/32nd. *See* ECF No. 64-16 at 5–6.

In connection with the above accident, Plaintiffs sued Defendants, claiming that Defendants negligently and recklessly rented them a vehicle with inadequate tires, breached an implied warranty to Plaintiffs, breached an express warranty to Plaintiffs, and were liable for loss of consortium. *See* ECF No. 51 at 9–28. For each of their claims, Plaintiffs sought both compensatory and punitive damages. *See id.* Defendants now move for summary judgment only on Plaintiffs' punitive damages claims. ECF No. 63 at 1.

II. **DISCUSSION**

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact" pertaining to a claim. *See Sikkelee v. Precision Airmotive Corp.*, 907 F.3d 701, 708 (3d Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). When deciding a summary judgment motion, the Court must "view the facts in the light most favorable to the nonmoving party." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468 (3d Cir. 2016).

Summary judgment is improper here because there is a genuine dispute of material fact as to whether Plaintiffs can recover punitive damages. State law governs the availability of punitive damages in this case, *see Inter Med. Supplies, Ltd. v. Ebi Med. Sys.*, 181 F.3d 446, 464 (3d Cir. 1999), and the parties agree that Pennsylvania choice-of-law rules apply but disagree on whether those rules point to Virginia or Pennsylvania law as controlling. *Compare* ECF No. 63-1 at 3, *with* ECF No. 65-2 at 6.

**A. Choice-of-Law Analysis**

Under Pennsylvania choice-of-law rules, this Court must —as a threshold step—decide if there is a conflict between the punitive damages laws of Pennsylvania and Virginia. *See Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). If a conflict exists, the Court must determine whether that conflict is a "true conflict" or a "false conflict." *Id.* There is a true conflict if each jurisdiction's interests would be harmed if its respective laws were not applied, while there is a false conflict if only one jurisdiction's interests would be harmed if its law were not applied. *McDonald v. Whitewater Challengers, Inc.*, 116 A.3d 99, 107 (Pa. Super. Ct. 2015) (citation omitted). If there is a false conflict, "the [C]ourt must apply the law of the state whose interests would be harmed if its law were not applied." *Id.* (citation omitted). If there is a true conflict, the Court must apply the law of the state that "has the most significant relationship to the occurrence and the parties." *Melmark, Inc. v. Schutt ex rel. Schutt*, 206 A.3d 1096, 1107 (Pa. 2019).

There is a conflict between Pennsylvania and Virginia law, at the very least, because Virginia, but not Pennsylvania, has a statutory cap on punitive damages. *See Schoenberg v. Exportadora de Sal, S.A. de C.V.*, 930 F.2d 777, 782 (9th Cir. 1991) (assuming a conflict existed for choice-of-law purposes where one jurisdiction capped damages and the other did not). *Compare* Va. Code § 8.01-38.1 (setting a $350,000 cap), *with Minissale v. State Farm Fire & Cas. Co.*, 988 F. Supp. 2d 472, 477 (E.D. Pa. 2013) ("Pennsylvania law does not cap [punitive] damages"). However, this Court does not need to decide if the conflict is a true or false conflict; regardless, Virginia law applies. Through its statutory cap on damages, Virginia has an interest in protecting parties who operate businesses in its jurisdiction from excessive verdicts, and that interest would be harmed by Pennsylvania's lack of a cap on punitive damages. *See In re Aircrash*

3

*in Bali*, 684 F.2d 1301, 1307 (9th Cir. 1982).  Insofar as there is a false conflict between Virginia and Pennsylvania law, Virginia law therefore applies.  *See McDonald*, 116 A.3d at 107.

Insofar as there is a true conflict, Virginia law also applies because Virginia "has the most significant relationship to the occurrence and the parties." *Melmark*, 206 A.3d at 1107.  This Court must consider separately whether Pennsylvania or Virginia has a more significant relationship to each issue before this Court because "choice of law analysis is issue-specific, [and] different states' laws may apply to different issues in a single case." *Berg Chilling Sys. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) (assuming that Pennsylvania law applies an issue-by-issue approach to choice of law).  Though the overarching issue before this Court is punitive damages, Plaintiffs seek punitive damages both for tort claims and for claims, like breach of express warranty, that are contractual in nature.  *See* ECF No. 51 at 9–28; *cf. StarNet Ins. Co. v. Ruprecht*, 3 F.4th 342, 348 (7th Cir. 2021) (holding that breach of the warranty of reasonable workmanship is a contractual claim).  As an initial matter, though Defendants do not raise this issue, punitive damages are generally not available for claims sounding in contract.  *See McShea v. City of Philadelphia*, 995 A.2d 334, 340 (Pa. 2010); *Dunn Constr. Co. v. Cloney*, 682 S.E.2d 943, 946 (Va. 2009).  However, even assuming this Court must consider the availability of punitive damages separately for Plaintiffs' contract and torts claims, Virginia law applies.

Virginia has the most significant relationship to any of Plaintiffs' contract claims.  In making such a determination for contract claims, courts typically look to (1) "the place of contracting," (2) "the place of negotiation of the contract," (3) "the place of performance," (4) "the location of the subject matter of the contract," and (5) the parties' domicile, residence, place of incorporation, or place of business.  Restatement (Second) of Conflict of Laws § 188 (1971).  Here, the first four factors overwhelmingly favor Virginia.  The parties finalized the rental agreement in

4

Virginia, *see* ECF No. 61-3 at 2, negotiated a replacement vehicle in Virginia, and the relevant vehicle was delivered to Plaintiffs by Defendants in Virginia. *See* ECF No. 64-2 at 6. The final factor carries little weight because neither of the parties are domiciled in Virginia or Pennsylvania, *see* ECF No. 6 at 1; ECF No. 8 at 1, and Defendants appear to do business nationwide. *See* Avis, Locations – USA, https://www.avis.com/en/locations/us [https://perma.cc/JNP7-AH6C].

Virginia also has the most significant relationship to Plaintiffs' tort claims. In making such a determination for tort claims, courts typically look to where (1) the injury occurred, (2) the parties are domiciled, reside, are incorporated, or do business (3) the relationship, if any, between the parties is centered, and (4) the alleged wrongdoing occurred. *See* Restatement (Second) of Conflict of Laws § 145 (1971). In this case, the third and fourth factors strongly favor Virginia. The parties' relationship is centered in Virginia, where they finalized and negotiated their rental agreement and respectively delivered and received the rental vehicle. *See* ECF No. 61-3 at 2; ECF No. 64-2 at 6.

Likewise, Plaintiffs' allegations of wrongdoing primarily concern conduct in Virginia. And when the issue subject to a choice-of-law analysis is punitive damages, the place where the alleged wrongdoing occurred is particularly important. *In re Air Crash Disaster near Chicago*, 644 F.2d 594, 613 (7th Cir. 1981); *Kelly v. Ford Motor Co.*, 933 F. Supp. 465, 469 (E.D. Pa. 1996). Here, Plaintiffs' allegations concern Defendants' failure to properly inspect and maintain a rental vehicle, decision to rent the vehicle in a defective condition, and failure to warn Plaintiffs of the defects. *See, e.g.*, ECF No. 51 at 9–10. Defendants' decision to rent the vehicle and any alleged failure to warn Plaintiffs occurred at Defendants' rental center in Arlington, Virginia. And though Plaintiffs plausibly allege that issues with the vehicle's tire tread depths began at Defendants' other locations, *see* ECF No. 64-1 at 21; ECF No. 64-9 at 5–6; ECF No. 64-12 at 2–5, Defendants'

Virginia location was still required to examine the vehicle before renting it out. *See* ECF No. 64-5 at 5.

The only above factor which weighs in favor of Pennsylvania is the first factor—the place of injury. However, in cases involving moving vehicles, courts attach less significance to the place of injury if such a place was merely "fortuitous." *See Marks v. Redner's Warehouse Mkts.*, 136 A.3d 984, 991 (Pa. Super. Ct. 2016); *Griffith v. United Air Lines, Inc.*, 203 A.2d 796, 806 (Pa. 1964) (where plane crashed in Colorado, court weighed place of injury less because "the site of the accident was purely fortuitous"). Here, Plaintiffs were traveling from Washington, D.C. to Ohio. *See* ECF No. 64-2 at 4. Pennsylvania was neither their starting or ending destination, and they were driving through that state when the accident occurred. Accordingly, this factor is entitled to less weight. The remaining factor, the parties' domicile and residence, carries little weight, as discussed for Plaintiffs' contract claims. Given the above factors, Virginia has a stronger relationship to Plaintiffs' tort claims.

### B. Availability of Punitive Damages under Virginia Law

The Court next turns to whether Plaintiffs can recover punitive damages under Virginia law. Under Virginia law, a plaintiff may recover punitive damages where the defendant's conduct amounts to "misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others." *Xspedius Mgmt. Co. of Va., L.L.C. v. Stephan*, 611 S.E.2d 385, 387 (Va. 2005). To show a conscious disregard for the rights of others, "[i]ll will is not a necessary element." *Infant C. v. Boy Scouts of Am., Inc.*, 391 S.E.2d 322, 327 (Va. 1990) (citation omitted). Rather, there must be knowledge or a reckless disregard for the fact that the defendant's conduct "will probably result in an injury." *Id.* (citation omitted). Whether a

defendant exhibits such a level of recklessness or negligence is a factual issue often best suited for the jury.  *Cf. Pichler v. Unite*, 542 F.3d 380, 389 (3d Cir. 2008).

In this case, there is a genuine dispute of material fact as to whether Defendants recklessly disregarded the probability that their conduct would "result in an injury." *See Infant C.*, 391 S.E.2d at 327.  There is evidence that Defendants knew that driving with inadequate tire treads posed serious risks.  Specifically, Plaintiffs cite to Defendants' policies, which underscored repeatedly that employees were required to inspect the tire treads on vehicles regularly and to replace tire treads below certain tread depths.  *See, e.g.*, ECF No. 64-7 at 2; ECF No. 64-8 at 2.  And Plaintiffs point to at least some evidence that Defendants failed to inspect the tire tread depths here.  *See* ECF No. 69-2 at 2 (indicating an absence of records showing the tire tread depths were inspected); ECF No. 61-1 at 3 (inadequate number of tire rotations).  Finally, Plaintiffs point to evidence that the tire tread depths on their vehicle were noticeably below Defendants' standards and the legal limit.  *Compare* ECF No. 64-16 at 6 (rear tires measured 1/32nd and 0/32nd tread depth immediately after the accident), *with* ECF No. 64-8 at 2 (setting forth Defendants' standards and a legal limit).  Though Defendants dispute this evidence, viewing the evidence in the light most favorable to Plaintiffs, *Dempsey*, 834 F.3d at 468, there is a genuine dispute of material fact as to whether Defendants recklessly disregarded the possibility that the tire tread depths on Plaintiffs' rental vehicle could injure Plaintiffs.

### III.   CONCLUSION

For the above reasons, the Court will **DENY** Defendants' Motion for Partial Summary Judgment (ECF No. 63).  An appropriate order will follow.

                              **BY THE COURT:**

                              **/s/ Chad F. Kenney**

                              _____

                              **CHAD F. KENNEY, JUDGE**